USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/27/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

MURDISE MOORE,

Plaintiff,

- against -

LOUIS DEJOY,

Defendants.

---------------------------------------------------------------X

18-CV-9967 (RWL)

**DECISION AND ORDER:**
**MOTION TO DISMISS**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff, a retired employee of the United States Postal Service ("USPS" or "Postal Service"), proceeding pro se, alleges that her manager discriminated against her on the basis of her age and that she was subject to a hostile work environment. The Amended Complaint advances claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq; the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL"); and the New York City Human Rights Law, N.Y. City Admin. Code § 8-101 et seq. ("NYCHRL"). The Court previously dismissed Plaintiff's NYSHRL and NYCHRL claims. The Postal Service (of which Defendant Louis DeJoy is the Postmaster General) now moves to dismiss any hostile work environment claim because Plaintiff did not exhaust any such claim at the administrative level. For the reasons set forth below, the Court GRANTS the Postal Service's motion and dismisses Plaintiff's remaining claims with prejudice.

## FACTUAL BACKGROUND[1]

In her initial complaint Plaintiff alleged that her manager at Fordham Post Office, Patricia Henry, announced that Plaintiff and her colleagues "weren't doing [their] jobs," that "fifth graders could do [their] jobs," and that "it was her way or the highway and that she would take [their] jobs." Henry allegedly "threatened us/me stating loudly on the workfloor at the … post office that anyone attempting to use sicktime … would be penalized by having earned pay docked." Henry told Plaintiff "on approximately 5 different dates that [she] should retire." Plaintiff further alleged that she took sick leave in December 2017 but that Henry denied her use of sick leave for the time taken. Plaintiff asserted that a supervisor, Aida Santana-Putter, called Plaintiff's doctor to verify whether Plaintiff was indeed sick. Plaintiff also alleged that in late December 2017, and in January or February 2018, she spoke with an EEOC representative to report the disallowance of her use of sick leave. In January 2018, Plaintiff allegedly received a letter from the Postal Service requiring her to return the salary she had been paid for the period for which her sick leave had been disallowed. Plaintiff asserted that she filed grievances, which were denied, and filed an appeal with the National Labor Relations Board ("NLRB"). (Compl. pp. 8-9.[2])

In her Amended Complaint, Plaintiff advances some of the same allegations as in her original Complaint. She claims that Henry began working as the manager of the Fordham Post Office in early 2017, whereupon she told employees that she was there to "clean house," and that it was "[her] way or no way at all." Plaintiff was allegedly told, on

[1] Factual citations support the sentence it immediately follows as well as all previous sentences that do not have a factual citation.

[2] "Compl." refers to Plaintiffs' initial Complaint (Dkt. 1.).

May 17, 2017, to "quit or retire." In November 2017, Plaintiff allegedly called in sick for the period from November 27 through December 1, and then again for the period December 2 through December 9. As in the original Complaint, she alleges that she was initially paid for the period of sick leave from December 2 through December 9, 2017, but that the Postal Service later asked her to return $945 after her sick leave was disapproved. (Amend. Compl. at 8.[3])

Plaintiff does introduce some new allegations in the Amended Complaint. She asserts that she faced "constant harassment" from Henry, as a result of which she was "a nervous [w]reck all the time" and suffered from "sleepless nights," hair loss, and a "nervous stomach" that required her to "constantly tak[e] medicine." (Amend. Compl. at 6.) She also claims that, in June 2018, she "came back to the station after completing [her] route as [she] walked to the back of the station to put [her] outgoing mail in the bin … Ms. Henry came out of the office and said to [her,] 'look the old lady is back.'" And on September 8, 2018, Henry allegedly shouted to her, "you old mother fucking bitch" as Plaintiff returned from her break. (Amend. Compl. at 9.)

## PROCEDURAL HISTORY

The procedural history includes two administrative Equal Employment Opportunity ("EEO") proceedings as well as the proceedings in the instant case.[4]

---

[3] "Amend. Compl." refers to Plaintiff's Amended Complaint (Dkt. 6.)

[4] Records of the administrative proceedings are set forth as exhibits to the Declaration of Susan M. Flanagan, Manager of EEO Compliance and Appeals, United States Postal Service, dated Dec. 2, 2021 (Dkt. 71) ("Flanagan Decl."), and the Supplemental Declaration of Ms. Flanagan dated March 30, 2022 (Dkt. 83) ("Supp. Flanagan Decl."). On motions to dismiss in employment-discrimination cases, courts may consider documents filed with the EEOC. *See, e.g.*, *Holowecki v. Federal Express Corp*., 440 F.3d 557, 565 (2d Cir. 2006) ("In reviewing the Rule 12(b)(6) ruling, it is proper for this court to

## A. The First EEO Case: Absence Without Leave Claims

On December 11, 2017, Plaintiff contacted the Postal Service's EEO office, complaining of an incident on December 2, 2017 ("EEO AWOL Case"). (Flanagan Decl. ¶ 5, Ex. A.) Plaintiff alleged that she was discriminated against on the basis of race, sex, physical disability, and retaliation when she was charged 40 hours of AWOL and when her supervisor telephoned her doctor to inquire about her illness (the "AWOL Claims"). That is consistent with forms Plaintiff completed for pre-complaint counseling on December 11, 2017 and February 1, 2018.[5] (Flanagan Decl., Exs. B, C.)

On May 29, 2018, Plaintiff filed a formal "EEO Complaint of Discrimination in the Postal Service" ("EEO Complaint"). (Flanagan Decl., Ex. F.) On June 22, 2018, the Postal Service issued a "Partial Acceptance/Partial Dismissal Of Formal EEO Complaint," in which it noted that Plaintiff raised three issues with respect to her discrimination

---

consider the plaintiffs['] relevant filings with the EEOC …, none of which were attached to the complaint, because the … plaintiffs[] rely on these documents to satisfy the ADEA's time requirements"); *Collins v. City of New York*, 156 F. Supp. 3d 448, 455 n.4 (S.D.N.Y. 2016); *Lugo-Young v. Courier Network*, Inc., No. 10 Civ. 3197, 2012 WL 847381, at *1 n.2 (E.D.N.Y. Mar. 13, 2012) ("With respect to administrative filings (such as the NYSDHR and the EEOC) and decisions, the Court may consider such documents because they are public documents filed in state administrative proceedings, as well as because they are integral to Plaintiff's claims") (citation and alteration omitted). Regardless, as explained below, the Court has, after due notice to the parties, converted the motion to one for summary judgment for which it may consider materials outside the pleadings.

[5] Plaintiff also filed a grievance with the NLRB on December 11, 2017, based on the same incidents. The NLRB dismissed her charge after noting that its investigation "show[ed] that [she was] absent from work from November 7 through December 9, 2017" and that "there [wa]s insufficient evidence to establish that the Employer disparately enforced work rules or otherwise discriminated against [her]." (Flanagan Decl., Ex. D at 1.) Plaintiff also engaged in a grievance process with the Postal Service, resulting in a decision on April 9, 2018, finding no violation and concluding that the case files contained no supporting documentation from Plaintiff as to medical incapacity or need to care for a family member. (Flanagan Decl., Ex. E.)

complaint: (1) "On December 2, 2017 through December 9, 2017, you were charged forty (40) hours of Absent without Leave"; (2) "On January 8, 2018, the supervisor called your physician inquiring about your medical condition"; and (3) "On an unspecified date, you received a Letter of Demand for $945.89." (Flanagan Decl., Ex. G at 1.) The Postal Service accepted for investigation the first two claims; it dismissed the third claim because it involved "a collateral attack on a matter within the jurisdiction of the Debt Collection Act." (Flanagan Decl., Ex. G at 3.)

The Partial Acceptance/Partial Dismissal expressly informed Plaintiff that, if she did not agree with the accepted issues as defined, she "must provide a written response specifying the nature of your disagreement within seven (7) calendar days of receipt of this letter . . . ." It further explained: "any notification of disagreement with the defined accepted issues is not an opportunity or forum to raise additional, unrelated allegations of discrimination" and that "[a]dditional unrelated issues must be pursued through established procedures with your local EEO Office." (Flanagan Decl., Ex. G at 2.) Plaintiff did not file a written response, nor did she present additional issues. The EEO investigation therefore concerned only the charge of 40 hours of AWOL and the call to Plaintiff's physician inquiring about her alleged medical condition.

On November 28, 2018, the Postal Service issued a final agency decision concerning the unfair-labor practice claim regarding Plaintiff's having been charged 40 hours of AWOL for her absence from work between December 2 and December 9, 2017. (Flanagan Decl., Exs. H, I.) Plaintiff filed an appeal on December 27, 2018. (Flanagan Decl., Ex. J.) In that appeal, for the first time, Plaintiff alleged that "Mrs. Henry has constantly made remarks to me about my age and retirement," including "on or about

September 8, 2018," when Mrs. Henry allegedly "called [her] an old mother fucking bitch." (Flanagan Decl., Ex. J at 10.) On August 29, 2019, the EEOC affirmed the final agency decision, concluding that "Complainant has not shown that discrimination or reprisal occurred." (Flanagan Decl., Ex. K.) In its decision, the EEOC noted that Plaintiff's allegations of discrimination involved the AWOL Claims. The EEOC's decision made no reference to Plaintiff's allegations asserted for the first time on appeal, and noted that Plaintiff "failed to participate in the investigation [by failing to file an affidavit] and therefore failed to rebut the agency's articulated reasons for its actions [relating to the AWOL Claims]." (Flanagan Decl., Ex. K at 2.)

**B. The Second EEO Case: Henry Conduct And Comments**

On September 27, 2018, Plaintiff contacted the Postal Service's EEO office again, this time complaining of alleged improper conduct and comments by Patricia Henry (the "Second EEO Case"). (Flanagan Decl. ¶ 15.) Plaintiff filed a Form 2564-A ("Information for Pre-Complaint Counseling"), which the agency received on November 9, 2018, in which she alleged that, when she was walking back from her break on September 8, 2018, Patricia Henry "ranted to me screaming your break is over you old mother fucking bitch." (Flanagan Decl., Ex. L at 1.) She further alleged that, on September 19, 2018, Henry said, "the old lady came back," in reference to Plaintiff. Plaintiff indicated that she was represented by counsel. (Flanagan Decl., Ex. L at 2.)

On December 13, 2018, an EEO Dispute Resolution Specialist, Listra A. Charles, sent Plaintiff a notice stating that she had concluded the processing of Plaintiff's claim and informing Plaintiff that she could either "do nothing at which point your inquiry will expire and no further action will be taken on your counseling request, or you can elect to

file a formal complaint." (Flanagan Decl., Ex. M at 1.) The notice informed Plaintiff that she had 15 days from the date of receipt to file a formal complaint. The notice and forms provided to Plaintiff expressly informed her that if she did decide to file a formal complaint, she "must" send the appropriate forms to "NEEOISO-Formal Complaint; U.S. Postal Service; P.O. Box 21979; Tampa, FL 33622-1979" ("Formal Complaint Office") (*Id.*; *see also* Supp. Flanagan Decl. ¶¶ 8-11 and Exs. 2-4 (showing that multiple forms provided to Plaintiff on multiple occasions consistently identified the address to which a formal complaint had to be sent).) Plaintiff never filed a formal complaint with the Formal Complaint Office for the Second EEO Case. Instead, on January 14, 2019, the Postal Agency received another letter from Plaintiff addressed to "Listra A. Charles, EEO ADR Specialist" at 90 Church Street in New York. (Supp. Flanagan Decl. ¶ 6 and Ex. 1.) The letter was postmarked on January 10, 2019 (*id.*), and, per standard practice, was added to Plaintiff's informal counseling file. (Supp. Flanagan Decl.¶ 7.)

### C. The District Court Litigation

Plaintiff filed her initial complaint in this matter on October 29, 2018. (Dkt. 1.) The Court sua sponte issued an Order of Dismissal on July 12, 2019. (Dkt. 5 ("Order of Dismissal").) It dismissed with prejudice Plaintiff's claim relating to the denial of sick time, explaining that "the NLRB has exclusive jurisdiction over claims of unfair labor practices under section 8 of the NLRA." (Order of Dismissal at 4.) As to any employment discrimination claim that Plaintiff might have asserted, the Court explained that Plaintiff did "not provide any facts suggesting a cause of action under any of the antidiscrimination statutes." (*Id*. at 6.) The Court, however, granted Plaintiff leave to replead "solely with respect to any claim that she was mistreated or retaliated against because of a protected

characteristic." (*Id*. at 7). It noted that "Plaintiff must also indicate whether she filed a timely charge with the Equal Employment Opportunity Commission (EEOC) with respect to any employment discrimination claim she seeks to raise." (*Id*.)

Plaintiff filed her Amended Complaint on September 3, 2019. On February 17, 2021, the Postal Service filed a motion to dismiss the Amended Complaint, arguing that Plaintiff's federal law claims should be dismissed because Plaintiff had prematurely filed suit in district court and failed to state a claim upon which relief could be granted, and that her state law claims should be dismissed because federal law provides the sole remedy for federal employees' claims of discrimination. The Court granted the Postal Service's motion with respect to the state law claims but denied the motion with respect to the federal law claims.

**D. The Instant Motion**

On November 23, 2021, the parties consented to my jurisdiction for all purposes. On December 3, 2021, the Postal Service filed a new motion to dismiss raising an issue not addressed in its earlier motion. Plaintiff filed her opposition on February 10, 2022. The Court held oral argument on March 14, 2022. During argument, the Court informed the parties that it was considering converting the motion to dismiss to one for summary judgment in light of the materials submitted beyond the Amended Complaint and because the Postal Service previously had filed a motion to dismiss that had been resolved by the Court. The Court explained that the parties would have the opportunity to submit any additional materials they thought relevant to the motion. Following argument, the Court issued an order memorializing its intent to potentially convert the motion to dismiss to one for summary judgment and setting dates for the parties to submit additional materials.

The Postal Service submitted a supplemental letter brief and declaration on March 30, 2022. Plaintiff filed a supplemental letter dated April 12, 2022. Defendant filed a reply on April 25, 2022. At that time, the motion became ripe for resolution.

## LEGAL STANDARDS

The Postal Service filed its motion as one to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), or, alternatively, for summary judgment pursuant to Fed. R. Civ. P. 56. Pursuant to Federal Rule of Civil Procedure 12(d), a motion to dismiss under Rule 12(b)(6) must be treated as one for summary judgment when the court considers matters outside the pleadings that do not fall within the limited group of materials that may be considered on a motion to dismiss for failure to state a claim. Fed. R. Civ. P. 12(d); *Hernandez v. Coffey*, 582 F.2d 303, 307 (2d Cir. 2009). Upon converting a motion to dismiss to one for summary judgment, all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion. *Hernandez,* 582 F. 2d. at 307. The Court has provided that opportunity.

"[A] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986). The Court's task is not to resolve contested issues of fact but rather to determine whether there exists any disputed issue of material fact. *Donahue v. Windsor Locks Board Of Fire Commissioners*, 834 F.2d 54, 58 (2d Cir. 1987); *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir. 1986). "'A fact is material when it might affect the outcome of the suit under governing law.'" *Gorham-DiMaggio v. Countrywide Home Loans, Inc.*, 421 F. App'x 97, 101 (2d Cir. 2011) (summary order) (quoting *McCarthy v.*

*Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)). A dispute "is 'genuine' … if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.

"The moving party bears the initial burden of demonstrating 'the absence of a genuine issue of material fact.'" *Federal Deposit Insurance Corp. v. Great American Insurance Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quoting *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553). Once that burden is met, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (citing *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2510). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" either by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"'All evidence submitted on the motion is to be construed in the manner most favorable to the nonmoving party.'" *Okin v. Village Of Cornwall-On-Hudson Police Department*, 577 F.3d 415, 427 (2d Cir. 2009) (quoting *Horvath v. Westport Library Association*, 362 F.3d 147, 151 (2d Cir. 2004)). However, "[t]o defeat a summary judgment motion, the non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Great American Insurance Co.*, 607 F.3d at 292 (first quoting *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986), then quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). While "disputes over facts that might affect the outcome of the suit under

the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S. Ct. 2510; *see also Knight*, 804 F.2d at 11-12 ("'the mere existence of factual issues – where those issues are not material to the claims before the court – will not suffice to defeat a motion for summary judgment'" (alteration omitted)) (quoting *Quarles v. General Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985) (per curium)).

Where, as here, a plaintiff is pro se, district courts must read her pleadings "liberally and interpret them to raise the strongest arguments that they suggest." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted). Courts "are less demanding of [pro se] litigants generally, particularly where motions for summary judgment are concerned." *Jackson v. Federal Express*, 766 F.3d 189, 195 (2d Cir. 2014). A pro se litigant thus is given "special solicitude" in responding to a motion for summary judgment. *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010); *see also Knowles v. New York City Department Of Corrections*, 904 F. Supp. 217, 220 (S.D.N.Y. 1995) (same). That solicitude, however, "does not relieve [the pro se litigant] of [her] duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen*, 351 F.3d at 50 (internal quotation marks omitted).

**DISCUSSION**

Read liberally, Plaintiff's Amended Complaint advances two causes of action: the same AWOL claim that already was dismissed with prejudice, and a claim of hostile work environment based on age aimed at getting Plaintiff to retire. The only remaining claim for the Court's consideration then is the hostile work environment claim. The Postal Service argues that that claim should be dismissed because Plaintiff did not file a formal

complaint with the EEOC alleging a hostile work environment or any facts relevant to a hostile work environment claim. Rather, Plaintiff filed a formal complaint concerning only the AWOL claim and the claim that her supervisor called her physician to inquire about Plaintiff's assertion that she was absent from work on account of a medical condition. Defendant is correct; Plaintiff's remaining claims should be dismissed for failure to exhaust administrative remedies.

In the EEO AWOL Case, Plaintiff filed a Pre-Complaint Counseling form stating that: "On November 16, 2017, I had a doctor's appointment for my diabetes. And on December 7, 2017, once at doctor for (same) I called out sick and Mrs. Henry AWOL me for one week even though I had my confirmation numbers and proper documentation. This action is unlawful and Mrs. Henry is retaliating just because of my (disability)." (Flanagan Decl., Ex. B at 1.) Plaintiff listed the following bases of discrimination: "race, sex, disability, retaliation." (*Id.*) She made no mention of any allegedly discriminatory remarks, nor of any age-related discrimination. On February 1, 2018, she filed another Pre-Complaint Counseling letter in which she again described facts related to the AWOL Claims, but made no mention of any allegations of age discrimination.[6] (Flanagan Decl., Ex. C.)

Plaintiff did file a formal EEO Complaint on May 29, 2018, in connection with the EEO AWOL Case. There, she checked off boxes for many forms of discrimination – including race (unspecified), religion (unspecified), national origin (unspecified), age

---

[6] In Plaintiff's second Pre-Complaint Counseling form, in a section entitled, "Discrimination Factors," she wrote: "race, age, sex, disability – trying to force me to retire." (Flanagan Decl., Ex. C at 1.) But she made no factual allegations related to age discrimination.

(unspecified), retaliation (unspecified), and disability (diabetes) – but did not allege any of the specific facts she now alleges in support of her age-based hostile-work-environment claim. (Flanagan Decl., Ex. F.) As in the Pre-Complaint Counseling forms, the only allegations she advanced related to the AWOL Claims. Plaintiff's EEO Complaint did not mention any of the alleged improper comments by Patricia Henry that form the basis of Plaintiff's hostile work claim in the pending action. The Postal Service confirmed as much, when, on June 22, 2018, it issued the "Partial Acceptance/Partial Dismissal of formal EEO Complaint" noting that Plaintiff raised three issues: the AWOL claim, the claim alleging that Plaintiff's supervisor calling her physician, and the claim that she received a letter demanding $945.89 for the leave taken. (Flanagan Decl., Ex. G.)

An EEO complaint defines the scope of investigation, and by extension the scope of claims that may be filed in federal court. *See, e.g.*, *Miller v. International Telephone and Telegraph Corp.*, 755 F.2d 20, 23-24 (2d Cir. 1985) ("No action based on a claim of age discrimination may be brought unless the claim was properly raised with the EEOC. . . and [is] within the scope of the investigation reasonably expected to grow out of that filing."); *Powers v. Grinnell Corp.*, 915 F.2d 34, 38 (1st Cir. 1990) ("The scope of the civil complaint is accordingly limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge") (internal quotation marks omitted). The Second Circuit has described the process by which complainants exhaust their administrative remedies as follows:

> Regulations promulgated by the Equal Employment Opportunity Commission ("EEOC") establish the applicable administrative procedures that a federal employee must exhaust prior to filing suit. The EEOC regulations require

> that the aggrieved employee, *inter alia*, (1) consult with a counselor at the relevant agency's Equal Employment Office ("EEO") within 45 days of the alleged discriminatory act, and, if the matter is not resolved after a mandatory counseling period, (2) file a formal written administrative complaint ("EEO Complaint") within 15 days of receipt of the EEO counselor's notice of final interview and right to file a formal complaint ("EEO notice"). The employee may then file a civil action (i) within 90 days of notice of a final agency decision on his or her EEO Complaint, or (ii) after 180 days from the filing of the EEO Complaint if the agency has not yet rendered a decision."

*Mathirampuzha v. Potter*, 548 F.3d 70, 74-75 (2d Cir. 2008) (quoting *Belgrave v. Pena*, 254 F.3d 384, 386 (2d Cir. 2001); *see* 42 U.S.C. § 2000e-16(c), 29 C.F.R. §§ 1614.105(a)(1), 1614.106(a) & (b), 1614.407(a) & (b)[7].

As the Supreme Court has admonished, the exhaustion requirements "are not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152, 104 S. Ct. 1723, 1726 (1994); *see Pryor v. National Grid*, No. 10-CV-6507, 2011 WL 3251571, at *2 (S.D.N.Y. July 28, 2011) (stating in context of Title VII claim, "[a]lthough *pro se* litigants are usually offered leniency, when it comes to statutory filing deadlines courts have consistently held that even *pro se* plaintiffs must be held to strict compliance"). Tersely put, "[u]nexhausted claims must be dismissed." *Young v. U.S. Department of Homeland Security*, No. 10-CV-9571, 2011 WL 6057849, at *1 (S.D.N.Y. Dec. 5, 2011) (citation omitted); *see also Lucenti v. Potter*, 432 F.Supp.2d 347, 357 (S.D.N.Y.2006) ("Courts must strictly adhere to [Title VII's] procedural requirements for gaining access to the federal courts.").

---

[7] The *Belgrave* court cited 29 C.F.R. § 1614.408, which was redesignated as section 1614.407 in 1999.

To exhaust her administrative claims with respect to alleged improper comments or conduct by Patricia Henry, or the allegedly hostile work environment, Plaintiff was required to file a formal EEO Complaint making relevant allegations. *See Potter*, 548 F.3d at 74-75; *Wilder v. United States Department Of Veteran Affairs*, 175 F. Supp.3d 82 (March 31, 2016) ("Timely exhaustion of administrative remedies requires that a federal employee comply with applicable EEOC regulations. Under these regulations, a government employee seeking to bring an employment discrimination claim must first seek informal counseling within his agency, and then file a formal complaint with the agency.") (internal quotation marks, citations, and alterations omitted). Plaintiff did not. The only formal complaint that she filed concerned the AWOL Claim; therefore, the only issues investigated concerned the 40 hours of AWOL and the alleged phone call to Plaintiff's physician.

To be sure, the Pre-Complaint Counseling form Plaintiff filed in the Second EEO Case included several of the allegations that Plaintiff now advances in connection with her hostile work environment claim. (*See* Flanagan Decl., Ex. L.) For example, in the Pre-Complaint Counseling form, Plaintiff alleged that Henry called her an "old mother fucking bitch" on September 8, 2018, and referred to her as the "old lady" on September 19, 2018. (Flanagan Decl., Ex. L at 1,2.) Plaintiff reiterated those claims in her second letter to Ms. Listra sent on January 10, 2019. (Supp. Flanagan Decl. Ex. 1.)

Yet Plaintiff, who was represented by counsel when she filed the Second EEO Case, never filed a formal administrative complaint in that case – even though she was cautioned that if she did not, her "inquiry will expire and no further action will be taken on your counseling request." (Flanagan Decl., Ex. M at 1.) Plaintiff instead submitted a

second letter to the EEO Dispute Resolution Specialist in New York; she sent nothing to the Formal Complaint Address in Tampa Florida – even though multiple correspondence and forms clearly and plainly set forth the proper recipient and address for a formal complaint.[8] The agency therefore had no opportunity to investigate, evaluate the investigation's findings, and issue a final agency decision as required to exhaust administrative remedies. *See Potter*, 548 F.3d at 74-75.

Because she did not file a formal complaint regarding alleged improper comments or a hostile work environment at the administrative level, Plaintiff cannot now pursue that claim in federal court. *See id.* at 76 (focusing on the factual allegations in the EEO Complaint to determine whether a claim had been presented to the agency for purposes of administrative exhaustion); *Belgrave,* 254 F.3d at 386 (affirming dismissal of untimely filed formal administrative complaint); *Heathington v. Harvey*, No. 04-CV-4501, 2005 WL 2077282, at *2 (E.D.N.Y. Aug. 29, 2005) (dismissing Title VII claim because plaintiff did not file formal administrative complaint and thus did not exhaust the required procedures).

An exception to the exhaustion requirement may be made for claims not formally asserted before the agency if they are "reasonably related" to those properly filed with the agency. *See Williams v. New York City Housing Authority*, 458 F.3d 67, 70 (2d Cir. 2006). But that cannot save Plaintiff's hostile work environment claim. The reasonably-

[8] Even if the second letter sent to Ms. Listra in New York qualified as a formal complaint, which it does not, it was not postmarked until January 10, 2019 – even though the December 13, 2018 notice to Plaintiff warned that her complaint, if filed with the correct office, could be subject to dismissal if not postmarked within 15 days from the day she received the notice. Unless Plaintiff did not receive the notice until December 26, 2022, she would have had to file a formal complaint before January 10, 2019 to be timely.

related inquiry hinges on "the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving." *Id.* (internal quotation marks and brackets omitted). For a new claim to be considered "reasonably related" to claims advanced during the administrative phase, the "factual underpinnings" of the newly-asserted claim must be present in a formal administrative complaint. *Id.* at 71. That is not the case here.

The formal administrative complaint that Plaintiff did file alleged only that she was wrongfully charged 40 hours of AWOL and that management officials called her physician to inquire into her medical condition. The claims presented to the agency concerned those two discrete events. The EEOC investigation therefore reasonably focused on whether Plaintiff's absence from work between December 2 and December 9, 2017, was justified; whether she submitted the appropriate documentation to substantiate her absences; and whether management officials called her physician to inquire into her medical condition. Given the narrow claims presented, the investigators would not reasonably have inquired into claims of a hostile work environment, let alone one specifically directed to age discrimination.

Plaintiff argues that she nevertheless exhausted her administrative remedies with respect to her claim of age-based hostile work environment based on the statements of Ms. Henry because the February 2018 pre-counseling form Plaintiff filed identified the following factors of alleged discrimination: "race, age, sex, disability – trying to force me to retire." (Flanagan Decl., Ex. C at 1.) The mere, vague reference of "age" and pressure "to retire," hardly sufficed to provide notice to the EEOC of Plaintiff's age-based hostile work environment claim. *See Butts v. City of New York*, 990 F.2d 1397, 1403 (2d Cir.

1993), *superseded by statute on other grounds as stated in Hawkings v. 1115 Legal Services Care*, 163 F.3d 684 (2d Cir. 1998) ("Were we to permit such vague, general allegations, quite incapable of inviting a meaningful EEOC response, to define the scope of the EEO investigation and thereby predicate subsequent claims to a federal lawsuit, such allegations would become routine boilerplate and Title VII's investigatory and mediatory goals would be defeated").  That is especially so here, where the facts alleged in the pre-counseling form reference only the AWOL Claims and not the statements that serve as the basis of the Second EEO Case.

Plaintiff's own actions are just as telling.  First, she did not challenge the limited scope of the investigation for the First EEO Case as disclosed in the agency's June 22, 2018 Partial Acceptance/Partial Dismissal of formal EEO Complaint.  (*See* Flanagan Ex., G (limiting scope of investigation to two claims, one being the claim that Plaintiff was charged with 40 hours of AWOL, and the other claim that her supervisor called her physician).)  Second, if, as Plaintiff suggests, the First EEO Case covered the hostile work environment claims related to Henry's statements, there would have been no reason for Plaintiff to file the Second EEO Case.  That she filed separate proceedings indicates that Plaintiff understood that the First EEO Case did not cover the claims of pervasive age-based harassment.

Accordingly, Plaintiff failed to exhaust her administrative remedies as to any claims other than the AWOL Claims, and she cannot pursue in federal court her claim for age-based hostile work environment.

## CONCLUSION

For the foregoing reasons, Defendant's motion is GRANTED and Plaintiff's claims are dismissed with prejudice. To the extent not discussed above, the Court has considered Plaintiff's arguments and determined them to be without merit.

SO ORDERED.

ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: April 27, 2022
New York, New York

Copies transmitted this date to all counsel of record. The Clerk's Office is respectfully directed to mail a copy of this Report and Recommendation to Plaintiff pro se and note service on the docket:

Ms. Murdise Moore
340 West 47th Street, Apt. 5-A
New York, NY 10036